AMERICAN CAST IRON PIPE CO. v. AMERICAN R. CO. OF PORTO RICO.

No. 3067.

Circuit Court of Appeals, First Circuit.

Dec. 10, 1936.

Besosa & Besosa, of San Juan, P. R., for appellant.

Francis H. Dexter and Dexter & Dexter, all of San Juan, P. R., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an action at law to recover the purchase price of certain materials sold to the defendant by the plaintiff, the order for which. was obtained by its representative, Miguel Morales, Inc., in Puerto Rico. Under the terms of the sale the merchandise, consisting of iron pipe and fittings, was to be paid for in 30 days from the date of shipment. The merchandise was shipped by the plaintiff on November 3, 1931, direct to, and was received and accepted by, the defendant in Puerto Rico.

The defendant answered generally that it had paid the account and set up three special defenses: (1) That Morales, Inc., was a general agent of the plaintiff with authority to receive payment, and that it paid the amount due to Morales, Inc.; (2) that the plaintiff has received from Morales, Inc., the price of the materials in the case, or its equivalent, and has accepted a settlement with Morales, Inc., in full satisfaction for the indebtedness set forth in its complaint; (3) that the plaintiff, having full knowledge of the payment by the defendant to Morales, Inc., acquiesced in the same, and that since the date of such payment the financial condition of Morales, Inc., has been impaired and the defendant now cannot recover of Morales, Inc.

The authority of Morales, Inc., as agent was expressed in a letter from the plaintiff to the defendant under date of September 25, 1931, in which the plaintiff informed the defendant that prices on the materials about which the defendant had inquired of it would be *quoted* to it by Miguel Morales, Inc., of San Juan, Puerto Rico, and closed by saying: "We sincerely trust you will find it possible to place order for your present requirements with Mr. Morales." So far as this letter indicates, Morales, Inc., was only authorized to quote prices and take an order. The merchandise was shipped direct from the plaintiff to the defendant with a bill of lading made out to the defendant.

The status of Morales as agent was further indicated in a preliminary inquiry by the court: "It was not the ordinary case, as I understand it—I am addressing myself to counsel—of employing a man as agent, but he is known as a manufacturers' agent. He takes orders for people who want to buy materials. (To Witness:) Was that your business?" to which Morales replied: "Well, yes, the business was done that way."

On December 16, 1931, the Railroad Company sent a check payable to Miguel Morales, the president of the Miguel Morales, Inc., for the amount of the merchandise, to wit, $7,987.67. Miguel Morales at the time was absent from San Juan, where Miguel Morales, Inc., was located. The check was indorsed by one Parsons, presumably with authority, and deposited in a Puerto Rican bank to the credit of the Miguel Morales, Inc.

On January 8, 1932, the plaintiff sent the following cable to the Miguel Morales, Inc.: "Please cable when can expect remittance American Railroad." On January 28, not having heard from Miguel Morales, Inc., it sent it the following cable: "What is delaying Railroad remittance?" On February 22, 1932, Morales sent the following cable: "Upon return from long island trip find your letter sixth received San Juan sixteenth stop Remittance mailed January twelfth including old balance stop."

On February 26, 1932, Morales, Inc., sent a letter to the plaintiff company to the effect that on Morales' return from a trip of several days around the island, he found plaintiff's letter dated February 6 evidently referring to the delay in receiving remittance from the Railroad Company. In explanation it said: "We see that apparently this letter (referring to a previous letter and remittance) was addressed to Birmingham which is an error, but we cannot account for same not having been received," and further stating that

they had stopped payment of their check for the above amount.

· Some time prior to March 4, 1932, Miguel Morales, Inc., sent another check to the plaintiff company for the amount of the merchandise sold to the Railroad Company, but before receiving the same the plaintiff on February 7 wrote the defendant to the effect that they had not received payment of the amount of their invoices and requested payment.

On February 17 the plaintiff received the following letter from the Railroad Company: "Gentlemen: In answer to your letter of February 7th referring to your invoice of Nov. 3rd in the amount of $7897.67 (?) as per our order #06503, we have the pleasure to inform you that under date of Dec. 11th this Company made payment of the above amount to Mr. Miguel Morales, your representative in San Juan, to whom we are sending a copy of this letter, as this deal was transmitted through his office at San Juan."

On March 4 the plaintiff forwarded a letter to the defendant stating that "We wish to acknowledge receipt of your letter of February 17th regarding remittance of our invoice of November 3rd in the amount of $7987.67.

"We wish to advise that we have received a remittance from Mr. Miguel Morales in a similar amount, his original remittance to us having gone astray.

"In this case, however, you should have remitted to us direct, since you will note from the invoices that we billed this material to you direct."

On March 15, 1932, the check forwarded by Miguel Morales, Inc., in February, 1931, having been protested for lack of funds, the plaintiff cabled Morales, Inc., as follows: "Bank Cables Checks Unpaid Must Insist You Arrange Immediate Payment Advise."

On March 22 the plaintiff again cabled Morales, Inc., as follows: "Cable Fifteenth Answer Quick When Checks will be Paid."

On March 29 plaintiff sent the following cable to Miguel Morales, Inc.: "Unless Cable Reply Received by Tomorrow with Definite Assurance Checks will be Paid Must Take Steps Protect Our Interest"

On April 14 the plaintiff sent the following cable to Miguel Morales, Inc.: "Advise Quickly if Large Check Paid If Not Definite date Payment"

Up to this point there is no dispute as to the facts. A witness and official of the plaintiff company testified that, upon receiving notice in the latter part of April, 1932, from the bank in which it had deposited the check of Morales, Inc., that the check of Morales, Inc., was protested and had been charged back to the plaintiff, he wrote a letter to the defendant in the early part of May following, referring to the letter written to the defendant by the plaintiff on March 4, in which it acknowledged receipt of a remittance from Mr. Morales and called to the attention of the defendant that the check was not paid, and that the plaintiff would look to the Railroad Company and hold it liable for the payment.

The defendant denied having received this letter. The plaintiff claims its copy had been lost or destroyed. The record, however, sets forth a conversation between counsel in relation to such a letter, in which counsel for defendant finally appears to have admitted the existence and receipt of the letter and the contents as above set forth.

Counsel for defendant did not deny the conversation was substantially as stated, but says it referred to the letter of March 4, 1932. Some of the testimony which resulted in this conversation did refer to the letter of March 4, but that letter was produced and introduced by the defendant, so that obviously there was no occasion to deny its existence. Again, the letter in dispute was a natural consequence of the notice from the bank in April that the check of Morales, Inc., had not been paid.

However, nothing further was done by the plaintiff to press any claim it might have against the defendant until nearly two years later, when this action was brought. In the meantime the plaintiff continued to seek a settlement of this account from Morales, Inc.

At the trial of the case many exceptions to the admission and rejection of evidence were taken by the plaintiff, but if there was error in the rulings of the trial judge in this respect, we think, in view of our conclusion, that the plaintiff was not prejudiced thereby. Both the plaintiff and defendant also presented to the trial judge numerous requested instructions.

It is not open to the plaintiff on this record to question the instructions given by the court in its charge to the jury, for no exceptions to the charge were

taken and brought to the court's attention before the jury retired. If they had been, the court might have corrected any errors on their being called to his attention. Exceptions to a charge under rule 10 of this court must be taken before the jury retires. A party, even with consent of the trial judge, cannot, after the jury has returned its verdict and after judgment has been entered, prepare and file exceptions, as was done here. This being so, the only material questions on this record saved by exception and assigned as error are whether there was evidence from which the jury could have found that Morales, Inc., was authorized to receive payment from the defendant, or the plaintiff ratified its act in receiving payment.

However, whether Morales, Inc., was authorized to receive payment from the defendant is immaterial, since it is clear from the evidence that the plaintiff ratified the act of Morales, Inc., in receiving payment for the merchandise sold to the defendant. From the plaintiff's letter of February 6 to the defendant, by its indorsement of the check and its deposit to its account, and by its persistent efforts to collect of Morales, Inc., for two months without making any claim on the defendant company, or notifying the defendant that the plaintiff repudiated the act of its agent, the jury would have been warranted in finding that the plaintiff had ratified the act of Morales, Inc., in accepting payment from the defendant.

A repudiation of an agent's act must be taken within a reasonable time. A principal cannot accept its agent's act and, after it finds that it cannot realize from the agent, then have recourse to a third party, who was its original debtor.

Not only did the plaintiff attempt for two months to realize on the check given by Morales, Inc., covering the remittance by the defendant, but after notifying the defendant in May, 1932, that it would hold it liable, the plaintiff still continued for two years its efforts to collect of Morales, Inc., before bringing this action. In a letter under date of January 10, 1934, relating to an offer of settlement by Morales, Inc., in which it offered the plaintiff its notes and an assignment of an insurance policy on the life of Morales as security for the payment of the notes, the plaintiff wrote, pending receiving an assignment of the policy: "In the meantime you will please bear in mind that our holding of the notes in no wise indicates their acceptance in payment of the several obligations which this company *looks to you for an accounting.*" (Italics supplied.)

On April 14, 1934, having received the assignment of the insurance policy, the plaintiff again wrote Morales, Inc., to the effect that it refused to accept the notes "in payment of your account, but to accept and hold them with the assignment referred to above as collateral or security *for your account.*" (Italics supplied.)

Upon the evidence the jury was warranted in finding that the plaintiff ratified the action of its agent in accepting the remittance.

Our judgment entered June 3, 1936, is hereby affirmed.

MORTON, Circuit Judge, concurs in the result.